In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR the PROPOSED INITIATED CONSTITUTIONAL AMENDMENT "CONCERNING SUITS AGAINST NONGOVERNMENTAL EMPLOYERS WHO KNOWINGLY AND RECKLESSLY MAINTAIN AN UNSAFE WORK ENVIRONMENT" Adopted on April 19, 1995, and Motion for Rehearing Denied on May 3, 1995.

Vickie Armstrong, Petitioner,

and

Neil D. O'Toole and Sharyn E. O'Toole, Respondents,

and

Victoria Buckley, Rebecca Lenahan, and Steve Erkenbrack, Title Board.

No. 95SA150.

Supreme Court of Colorado, En Banc.

June 30, 1995.

Berry & Singer, John Berry, Denver, for petitioner.

Dallas, Holland & O'Toole, P.C., Neil D. O'Toole, Denver, for respondents.

Sharyn E. O'Toole, Lakewood, pro se.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Gen. Legal Services Section, Denver, for Title Bd.

Justice VOLLACK delivered the Opinion of the Court.

Pursuant to section 1–40–107(2), 1B C.R.S. (1994 Supp.), petitioner Vickie Armstrong (Armstrong), a registered elector of the State of Colorado, challenges the ballot title prepared by the Title Setting Review Board (the Board) for a proposed initiative amendment to the Colorado Constitution concerning a safe workplace environment. We affirm the ruling of the Board.

The proposed constitutional amendment would allow employees of nongovernmental entities to sue their employer for any and all damages if the employer knowingly and recklessly maintained an unsafe work environment. The ballot title prepared by the Board read as follows:

*Title*

An amendment to the Colorado Constitution concerning suits against nongovernmental employers who knowingly or recklessly maintain an unsafe work environment, and in connection therewith, providing that such an employer shall not be immune from suit by a worker who is injured or dies as a result of that unsafe work environment and requiring that damages and losses recovered in such suits be reduced by benefits paid under the Workers' Compensation Act of Colorado.

The respondents, Neil D. O'Toole and Sharyn E. O'Toole, the proponents of the amendment, submitted their proposed amendment to the Board. On April 19, 1995, the Board convened a hearing pursuant to section 1–40–106(1), 1B C.R.S. (1994 Supp.), and set a title, a ballot title and submission clause, and a summary for the proposed amendment. After the Board's initial hearing, Armstrong filed a timely motion for rehearing with the Secretary of State which the Board denied. Pursuant to section 1–40–107(2), 1B C.R.S. (1994 Supp.), Armstrong then filed this challenge to the Board's action.[1]

## II.

█ The Board is vested with considerable discretion in setting the title, ballot title and submission clause, and summary. *See In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports,* 826 P.2d 1241, 1245 (Colo.1992). The Board must set a title which correctly and fairly expresses the true intent and meaning of the measure. The title, by definition, is to be "a brief statement that fairly and accurately represents the true intent and meaning of the proposed test of the initiative." §§ 1–40–102(10), 1–40–106(3)(b), 1B C.R.S. (1994 Supp.).

█ The Board is given discretion in resolving the interrelated problems of length, complexity, and clarity in designating a title and a ballot title and submission clause. *In*

---

1. The proposed constitutional amendment is provided in Appendix 1, and the Board's proposed title, ballot title and submission clause, and summary are provided in Appendix 2.

*re Proposed Initiative Concerning "State Personnel System"*, 691 P.2d 1121, 1125 (Colo.1984). The Board's duty is merely to summarize the central features, and not every feature, of the proposed initiative measure in drafting a title or ballot title and submission clause in a clear and concise manner. *See In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito (Limited Gaming IV)*, 873 P.2d 733 (Colo.1994); *In re Proposed Election Reform Amendment*, 852 P.2d 28, 32–33 (Colo.1993).

 In reviewing determinations by the Board, our role is not to address the merits of the proposed initiative; instead, our review of the Board's action is limited to whether the title, ballot title and submission clause, and summary fairly reflect the intent of the initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board. *In re Proposed Initiative on Sch. Pilot Program*, 874 P.2d 1066 (Colo.1994). We give great deference to the Board's action in exercising its drafting authority and we are mostly concerned with the Board "not ... writ[ing] the best possible ballot title but simply ... eliminat[ing] a title which is insufficient or unfair." *In re Campaign and Political Finance Initiative*, 830 P.2d 954 (Colo.1992) (citing *In re Proposed Initiative Concerning "State Personnel System"*, 691 P.2d 1121, 1125 (Colo.1984)). We will only set aside the Board's action as invalid when the language used by the Board is clearly misleading. *In re Campaign and Political Finance Initiative*, 830 P.2d at 954 (citing *In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports*, 826 P.2d at 1245).

With these principles in mind, we now turn to the challenge to the title raised by the petitioners.

## III.

 Armstrong argues that the Board, in setting a general title, did not comply with section 1–40–106.5, 1B C.R.S. (1994 Supp.), and the drafting guidelines established by the Colorado General Assembly. Armstrong maintains that the single subject of the title for the proposed initiative does not inform the public about the subject matter of the proposed initiative: to allow injured workers to sue their nongovernmental employer for any and all damages and to have the amount of any such award offset by Workers' Compensation benefits. Armstrong additionally asserts that the Board failed to develop a "tight" title which would have encompassed all of the provisions of the proposed constitutional amendment. Armstrong concedes, however, that although the title is very broad, it does encompass the provisions of the initiative and therefore satisfies the single-subject requirement of Article V, Section 21, of the Colorado Constitution. Armstrong further concedes that the title satisfies the clear expression requirement of Article V, Section 21, of the Colorado Constitution for purposes of judicial review.

Article V, Section 1(5.5), of the Colorado Constitution is a new constitutional provision which requires a single subject for initiatives. The constitutional amendment was approved on the 1994 general election ballot and became effective upon proclamation by the Governor. *See* Senate Concurrent Resolution 93–4, 1993 Colo.Sess.Laws 2152. The provision states:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

In 1994, the General Assembly enacted section 1–40–106.5, 1B C.R.S. (1994 Supp.), which explains the rationale for the proposed amendment and defines the scope and purpose of imposing the single-subject requirement contained in Article V, Section 1(5.5), of

the Colorado Constitution. Section 1–40–106.5 provides in pertinent part:

**Single-subject requirements for initiated measures and referred constitutional amendments—legislative declaration.** (1) The general assembly hereby finds, determines, and declares that:

(a) Section 1(5.5) of article V and section 2(3) of article XIX of the state constitution require that every constitutional amendment or law proposed by initiative and every constitutional amendment proposed by the general assembly be limited to a single subject, which shall be clearly expressed in its title.

. . . .

(c) The language of such provisions was drawn from section 21 of article V of the state constitution, which requires that every bill, except general appropriation bills, shall be limited to a single subject, which shall be clearly expressed in its title.

. . . .

(e) The practices intended by the general assembly to be inhibited by section 1(5.5) of article V and section 2(3) of article XIX are as follows:

(I) To forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits;

(II) To prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters.

(2) It is the intent of the general assembly that section 1(5.5) of article V and section 2(3) of article XIX be liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum.

(3) It is further the intent of the general assembly that, in setting titles pursuant to section 1(5.5) of article V, the initiative title setting review board created in section 1–40–106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills.

As subsections (a) and (c) of section 1–40–106.5(1) indicate, the Board must limit the scope of an initiative's title to a single subject which must be "clearly expressed" in the ballot title. The Board may apply drafting rules of the general assembly and judicial decisions construing the single-subject requirement for legislative bills. Section 1–40–106.5(3) gives specific direction to the Board when setting titles pursuant to the provisions of Section 1(5.5) of Article V of the Colorado Constitution. The Board is directed to follow judicial decisions construing the constitutional single-subject requirement for bills and follow the same rules employed by the General Assembly in considering titles for bills.

The Board's choice of language in the title, which refers to suits against nongovernmental employers who knowingly or recklessly maintain an unsafe work environment, and in connection therewith, providing that such an employer shall not be immune from suit by a worker who is injured or dies as a result of that unsafe work environment and requiring that damages and losses recovered in such suits be reduced by benefits paid under the Workers' Compensation Act of Colorado, adequately conveys the central features of the amendment to the electorate. The language used by the Board properly repeats the operative language of the proposed amendment and expresses the true intent and meaning of the measure. *In re Proposed Constitutional Amendment Concerning Automobile Insurance Coverage Initiative,* 877 P.2d 853 (Colo. 1994).

The proponents are essentially claiming that the title should have been drafted more narrowly. We will not, however, reverse the Board's action merely because a better title could have been drafted. Rather, we conclude that the ballot title adopted by the Board was properly set by the Board from the text of the Safe Work Environment II initiative and accurately reflects the central features of this initiative. Because the ballot

title sets forth the intent of the Initiative with sufficient clarity to apprise the electorate of the purpose of the amendment, we affirm the ballot title adopted by the Board.

## APPENDIX 1

### ORIGINAL FINAL DRAFT

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO THAT THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO PROVIDE THAT ANY EMPLOYER WHO KNOWINGLY OR RECKLESSLY MAINTAINS AN UNSAFE WORK ENVIRONMENT SHALL NOT BE IMMUNE FROM SUIT FOR A RESULTING INJURY OR DEATH BY A WORKER AND HIS OR HER SURVIVORS FOR ANY AND ALL DAMAGES AND LOSSES, TO BE REDUCED BY BENEFITS PAID UNDER THE "WORKERS' COMPENSATION ACT OF COLORADO" FOR SUCH INJURY OR DEATH. FOR PURPOSES OF THIS AMENDMENT THE GOVERNMENT SHALL NOT BE CONSIDERED AN EMPLOYER.

## APPENDIX 2

### Proposed Initiative on "SAFE WORK ENVIRONMENT II"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING SUITS AGAINST NONGOVERNMENTAL EMPLOYERS WHO KNOWINGLY OR RECKLESSLY MAINTAIN AN UNSAFE WORK ENVIRONMENT, AND, IN CONNECTION THEREWITH, PROVIDING THAT SUCH AN EMPLOYER SHALL NOT BE IMMUNE FROM SUIT BY A WORKER WHO IS INJURED OR DIES AS A RESULT OF THAT UNSAFE WORK ENVIRONMENT AND REQUIRING THAT DAMAGES AND LOSSES RECOVERED IN SUCH SUITS BE REDUCED BY BENEFITS PAID UNDER THE "WORKERS' COMPENSATION ACT OF COLORADO".

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING SUITS AGAINST NON-GOVERNMENTAL EMPLOYERS WHO KNOWINGLY OR RECKLESSLY MAINTAIN AN UNSAFE WORK ENVIRONMENT, AND, IN CONNECTION THEREWITH, PROVIDING THAT SUCH AN EMPLOYER SHALL NOT BE IMMUNE FROM SUIT BY A WORKER WHO IS INJURED OR DIES AS A RESULT OF THAT UNSAFE WORK ENVIRONMENT AND REQUIRING THAT DAMAGES AND LOSSES RECOVERED IN SUCH SUITS BE REDUCED BY BENEFITS PAID UNDER THE "WORKERS' COMPENSATION ACT OF COLORADO"?

The summary prepared by the Board is as follows:

The measure provides that employers who knowingly or recklessly maintain a work environment that is unsafe shall not be immune from suit for a resulting injury or death by a worker and his or her survivors. Damages and losses recovered in such a suit would be reduced by benefits paid under the "Workers' Compensation Act of Colorado". The government would not be considered an employer for purposes of the measure.

Because governments are not considered employers under the measure, there would be no fiscal impact on local governments. The measure would have a negative but indeterminate fiscal impact on state government because of expected higher costs for the state-administered workers' compensation program.

4/19/95 Hearing

Adjourned 2:17 p.m.

5/3/95 Rehearing Denied

Adjourned 2:42 p.m.