2011 UT App 213

**FRANKLIN CREDIT MANAGEMENT
CORPORATION, Plaintiff, Appellant,
and Cross-appellee,**

v.

**Blaine J. HANNEY and The Hanney
Family Trust, Defendants, Appellees,
and Cross-appellants.**

No. 20100228–CA.

Court of Appeals of Utah.

June 30, 2011.

Laura S. Scott and Matthew D. Cook, Salt Lake City, for Appellant.

Brad C. Smith, Ogden, for Appellees.

Before Judges McHUGH, ORME, and VOROS.

## OPINION

VOROS, Judge:

¶ 1 Using a forged power of attorney, Shirley Hanney mortgaged the family home without her husband Blaine J. Hanney's knowledge. When she defaulted on the payments, Franklin Credit Management Corp., standing in the shoes of the lender, Bank One, brought suit. The trial court ruled that the trust deed on the home was void. Franklin Credit appeals. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Blaine and Shirley Hanney married in 1971. A few years later, Blaine's parents divided a portion of their property among their children. In particular, they conveyed an undeveloped lot (the Property) to Blaine. Blaine and Shirley built their family home on the Property. In 1995, Blaine and Shirley executed a Revocable Trust Agreement of the Hanney Family Trust (the Trust). Blaine then conveyed the Property to himself and Shirley as trustees of the Trust. Blaine also executed a general power of attorney naming Shirley as his attorney-in-fact.

¶ 3 In 1993, Blaine, his mother, and his siblings formed Hanney Development for the purpose of developing the remainder of his parents' property into a residential subdivision. The general partners of Hanney Development were Blaine, his mother, and his sister. Shirley was not a general or limited partner of Hanney Development. But because Blaine was frequently out of town, Shirley acted on Blaine's behalf and exercised full control of Hanney Development's finances. She kept the partnership's books, had signature authority on the partnership's accounts, dealt with the partnership's accountant in preparing tax returns and financial reports, signed Blaine's name as general partner on partnership documents, and opened mail sent to Blaine.

¶ 4 In 1994, Blaine and Shirley formed a construction company, Hanney & Hanney Construction, which Shirley also managed. Over the course of several years, Hanney & Hanney became overextended. To cover Hanney & Hanney's bills, Shirley began seeking money from various sources. According to Shirley's testimony at trial, she took approximately $600,000 from Hanney Development. She also used Blaine's general power of attorney to apply for loans and lines of credit from various banks. Blaine was unaware of these loans, although he and Shirley deducted the interest from the loans on their federal and state tax returns.

¶ 5 By mid–2000, Shirley needed money to cover her defalcation. She later explained, "Hanney Development needed to have money put in, because I knew that they [made] their distributions every December, or shortly

thereafter, and if there wasn't that money in there that I would definitely be found out." Around August 2000, a mortgage broker contacted Shirley and offered to help her obtain a mortgage on the Property that would allow her to pay off her other debts. The mortgage broker arranged a mortgage through Bank One, Franklin Credit's predecessor-in-interest. Shirley had no direct contact with Bank One.

¶ 6 With the help of the mortgage broker, Shirley began executing a series of documents that would allow her to obtain the loan. Shirley was told that the title company would not close the loan based on the general power of attorney, but required a special power of attorney. She was given a special power of attorney form for Blaine to sign along with other loan documents. On August 18, Shirley forged Blaine's name on the special power of attorney form and had it falsely notarized. On August 22, she executed a Warranty Deed (the Warranty Deed) conveying the Property from Blaine and Shirley as Trustees of the Trust to Blaine and Shirley individually as joint tenants. Shirley signed both her name and Blaine's name on the Warranty Deed. On August 24, she executed the Trust Deed (the Trust Deed) using the special power of attorney. She signed Blaine's name on the Trust Deed "by Shirley Ann Hanney as attorney in fact." The parties agree that Bank One did not rely on the general power of attorney in connection with this transaction.

¶ 7 The loan closed on August 24. Also on August 24, using the special power of attorney, Shirley executed a quit claim deed transferring title from Blaine and Shirley individually back to Blaine and Shirley as trustees of the Trust. All of the loan documents were recorded in the Davis County Recorder's Office on August 29. Shirley used the loan proceeds to pay the obligations of Hanney & Hanney Construction. Blaine had no knowledge of any of these transactions.

¶ 8 In 2003, Blaine discovered Shirley's actions. Blaine and Shirley filed for bankruptcy and, later, divorce. Because Shirley defaulted on the loan, Franklin Credit brought suit. Franklin Credit sought, as relevant to this appeal, a judgment foreclosing the Trust Deed. The trial court rejected Franklin Credit's claims and ruled that the Trust Deed was void. Franklin Credit appeals.

## ISSUE AND STANDARDS OF REVIEW

¶ 9 Franklin Credit raises several issues on appeal, but all resolve into a single question: whether the Trust Deed is a valid lien against the Property. The resolution of this issue involves both questions of law, which we review for correctness, and questions of fact, which we review for clear error. *See Tooele Assocs. Ltd. P'ship v. Tooele City Corp.*, 2011 UT 04, ¶ 16, 247 P.3d 371; Utah R. Civ. P. 52 ("Findings of fact . . . shall not be set aside unless clearly erroneous.").

## ANALYSIS

¶ 10 Franklin Credit's complaint sought, as relevant here, a judgment foreclosing the Trust Deed on Shirley's undivided one-half interest in the Property, a judgment declaring that the Trust Deed was a valid lien on Blaine's undivided one-half interest in the Property, and a judgment foreclosing the Trust Deed as a lien on Blaine's undivided one-half interest in the Property. The trial court determined that the Trust Deed encumbered neither Blaine's interest in the Property nor Shirley's interest in the Property.

¶ 11 On appeal, Franklin Credit contends, under a variety of theories, that Shirley successfully transferred the Property from the Trust to herself and Blaine individually. It further contends, again under a variety of theories, that Shirley was authorized to encumber Blaine's interest in the Property. Finally, it contends that Shirley was at the very least able to encumber her own one-half interest in the Property. Blaine responds that Shirley lacked authority to transfer the Property out of the Trust or to encumber any portion of it. In addition, Blaine contends that, due to a failure of proof at trial, Franklin Credit did not establish a necessary element of its case.

¶ 12 We first consider the validity of the Warranty Deed conveying the Property from

Blaine and Shirley as trustees to Blaine and Shirley individually as joint tenants—that is, conveying the Property out of the Trust. We then consider the validity of the Trust Deed as executed by Shirley on her own behalf and as executed by Shirley as Blaine's attorney-in-fact.

### I. Bank One Was Entitled To Rely on the Warranty Deed Conveying the Property Out of the Trust

¶ 13 Franklin Credit first contends that, under the terms of the Trust, Shirley was authorized as Trustee to convey the Property from the Trust to herself and Blaine individually.[1] Blaine responds that, under the terms of the Trust, Shirley "had no authority to act unilaterally," but only "in conjunction with Blaine." However, we need not reach the question of actual authority because Utah trust law protects the interests of entities doing business with a trustee so long as the entity lacks actual knowledge that the trustee is exceeding her powers:

> With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust power and their proper exercise by the trustee may be assumed without inquiry. The third person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and *a third person, without actual knowledge that the trustee is exceeding his powers or improperly exercising them, is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise.*

> A third person is not bound to assure the proper application of trust assets paid or delivered to the trustee.

Utah Code Ann. § 75–7–406 (1993) (emphasis added) (current version at Utah Code Ann. § 75–7–1012 (Supp.2010)).

¶ 14 Utah Code section 75–7–406, originally enacted in 1975, was part of the Uniform Trustee Powers Act (UTPA).[2] Despite this section's having been in effect for so many years, there is a dearth of Utah case law interpreting it.[3] In fact, nationwide, there is very little case law concerning this provision of the UTPA. *See, e.g., Wetherill v. Bank IV Kansas, N.A.,* 1997 WL 94255, at *3, 1997 U.S. Dist. LEXIS 2355 at *10 (D.Kan.1997) ("Despite having been enacted nearly thirty years ago, there is a paucity of case law interpreting [the corresponding Kansas statute].").

■ ¶ 15 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Retirement Bd.,* 2007 UT 16, ¶ 8, 157 P.3d 797 (internal quotation marks omitted). Although the contours of this statute have not been tested, its plain language is clear: anyone dealing with a trustee is "fully protected" if it is later discovered that the trustee exceeded her authority, so long as the third person does not have actual knowledge that the trustee is exceeding that authority. The sparse commentary on this issue seems to support this straightforward reading:

> The Uniform Trustees' Powers Act ("UTPA") ... completely abolishes the

---

1. The trial court found that Blaine and Shirley "testified that they understood the Trust would only take effect after one of them died." However, the trial court did not rule that the Trust never became effective; on the contrary, it seemed to assume that the Trust did become effective. Neither party contends on appeal that the Trust never became effective. We therefore proceed on the assumption that it did.

2. The UTPA was enacted in sixteen states. *See* Uniform Trust Code pref. notes (2005). In 2000, the Uniform Trust Code (UTC) was created to provide a national framework for trust law. *See id.* The UTC was adopted in Utah in 2004. *See* Utah Code Ann. §§ 75–7–101 to –1201 intro. (Supp. 2010). As a result, former Utah Code section 75–7–406 was amended, somewhat modi-

fied, and renumbered as Utah Code section 75–7–1012. *Compare id.* § 75–7–1012 (Supp.2010), *with id.* § 75–7–406 (1993). Because the transactions at issue in this case took place prior to the UTC's adoption in Utah, we consider only the relevant provisions of the UTPA, then codified at section 75–7–406. Current section 75–7–1012 is substantively similar to former section 75–7–406, although the current section adds an element of good faith not found in the former section. *Compare id.* § 75–7–1012 (Supp.2010), *with id.* § 75–7–406 (1993).

3. One case, *Anderson v. Dean Witter Reynolds, Inc.,* 920 P.2d 575 (Utah Ct.App.1996), mentions Utah Code section 75–7–406 but does not interpret or rely on it. *Id.* at 580 n. 3.

common law broad duty of inquiry [of third parties dealing with a trustee]. The UTPA automatically grants each trustee broad powers over the trust property and provides that a third party who deals with a trustee is not liable unless he or she had actual knowledge that the transaction constituted a breach of trust. The actual knowledge standard of liability allocates virtually all of the risk of harm associated with a breach of trust to the settlor and trust beneficiaries, thereby creating an incentive for them to take precautions to minimize the risk of a breach.

Peter T. Wendel, *The Evolution of the Law of Trustee's Powers and Third Party Liability for Participating in a Breach of Trust: An Economic Analysis,* 35 Seton Hall L.Rev. 971, 972–73, (2005) (discussing historical overview of trustee law, including UTPA and the Uniform Trust Code); *see also Smith v. Lillian V. Donahue Trust,* 157 N.H. 502, 953 A.2d 753, 756 (2008) ("[T]he UTPA protected a third party dealing with a trustee unless the third party possessed *actual knowledge* that the trustee was exceeding or improperly exercising the trustee's powers") (internal quotation marks omitted); *Bay View Bank, N.A. v. The Highland Golf Mortgagees Realty Trust,* 814 A.2d 449, 453–54 (Me.2002) (holding that under the Maine statute identical to ours, a third party was not liable for the trustee's actions where the third party had no actual knowledge that the trustee was exceeding his authority).

¶ 16 Neither party asserts that Shirley was not a trustee of the Trust, that Bank One did not deal with her, or that Bank One had actual knowledge that Shirley was "exceeding [her] powers or improperly exercising them," *see* Utah Code Ann. § 75–7–406 (1993). Consequently, Bank One "is fully protected in dealing with [Shirley] as if [she] possessed and properly exercised the powers [she] purport[ed] to exercise." *Id.* We therefore need not decide whether the Warranty Deed was valid because, insofar as Bank One

is concerned, it is deemed valid. Thus, as we proceed with this case, we treat the Warranty Deed as fully effective.[4] This means that, so far as Bank One was concerned, Shirley succeeded in conveying the Property from the Trust to herself and Blaine as joint tenants.

## II. The Trust Deed Is a Valid Lien on Shirley's Interest in the Property, but Not Blaine's

¶ 17 Having conveyed the Property from the Trust to herself and Blaine as joint tenants, Shirley then signed the Trust Deed for herself and, using the forged special power of attorney, for Blaine. We first consider the effect of the Trust Deed on Shirley's interest in the Property, and then the effect of the Trust Deed on Blaine's interest.

### A. Shirley's Interest in the Property

¶ 18 It is well-settled that "a partial owner may sell or encumber her share." *Belnap v. Walker Bank & Trust Co.,* 627 P.2d 47, 48 (Utah 1981). A joint tenant who mortgages her interest "severs and terminates the joint tenancy by the creation of a tenancy in common." *Tracy–Collins Trust Co. v. Goeltz,* 5 Utah 2d 350, 301 P.2d 1086, 1090 (1956); *see also Shiba v. Shiba,* 2008 UT 33, ¶ 17, 186 P.3d 329 ("A joint tenant of real property by conveying … his interest therein by a valid deed … severs and terminates the joint tenancy by the creation of a tenancy in common." (internal quotation marks omitted)); *In re Estate of Knickerbocker,* 912 P.2d 969, 974–76 (Utah 1996); *Nelson v. Davis,* 592 P.2d 594, 596 (Utah 1979). This is true even when the joint tenants are husband and wife: "Since the rights of each spouse are alienable, any purchaser or encumbrancer does not become a joint tenant in the property, but becomes a tenant-in-common with the remaining spouse." *Clearfield State Bank v. Contos,* 562 P.2d 622, 624–25 (Utah 1977) (holding mortgage valid against husband but not

---

4. Blaine contends that Shirley did not hold any transferable interest in the Property because, prior to being placed in the Trust, the Property belonged to Blaine alone. However, Blaine acknowledges that he transferred the Property to Shirley and himself as Trustees. And we conclude that section 75–7–406 protects Bank One's reliance on the Warranty Deed, regardless of whether Shirley had an alienable interest in the Property before becoming a trustee. We therefore do not address this issue further.

against wife where he had encumbered his portion of the property without her permission); *see also Tracy–Collins Trust,* 301 P.2d at 1090 (same); *First Midwest v. Pogge,* 293 Ill.App.3d 359, 227 Ill.Dec. 713, 687 N.E.2d 1195, 1198 (1997) (stating that spouse may mortgage his or her undivided one-half interest in jointly held property and upon default mortgagee may foreclose on that one-half interest).

¶ 19 Having executed the Warranty Deed, Shirley became a joint owner of the Property with Blaine. She therefore had the ability to encumber at least her interest in the Property. She did so by executing the Trust Deed. We thus conclude that the Trust Deed is valid with respect to Shirley's interest in the Property.

### B. Blaine's Interest in the Property

¶ 20 Whether Shirley's actions encumbered Blaine's interest in the Property requires a different analysis. Franklin Credit contends that Shirley had authority to encumber Blaine's interest in the Property, either through actual authority pursuant to the general power of attorney, through apparent or implied authority, or through Blaine's ratification.

### 1. Actual Authority Under the General Power of Attorney

¶ 21 At all relevant times, Shirley held a valid general power of attorney.[5] "A power of attorney is an instrument in writing by which one person, as principal, authorizes another to act as agent." *Kline v. Utah Dep't of Health,* 776 P.2d 57, 61 (Utah Ct. App.1989). "The scope of the authority so conferred may, by the terms of the instrument itself, be general or limited, but the instrument ... is to be strictly construed." *Id.* Here, the scope of the general power of attorney was, by the terms of the instrument itself, extremely broad:

I, BLAINE J. HANNEY ... appoint SHIRLEY ANN HANNEY ... my true and lawful attorney in fact for me and in my name, place and stead, giving unto said SHIRLEY ANN HANNEY *full power to do and perform all and every act that I may legally do through an attorney, in relation to all of my property, real or personal,* wherever situated, to carry out the purposes for which this power is granted, specifically including the power to make deposits, sign checks, endorse items, and withdraw funds from checking, savings, or other accounts, with full power of substitution and revocation, hereby ratifying and affirming that which SHIRLEY ANN HANNEY or my agent's substitute shall lawfully do or cause to be done by my agent or my agent's substitute lawfully designated by virtue of the power herein conferred upon my agent.

(Emphasis added.) Thus, by its own terms, the general power of attorney granted Shirley authority to transfer or encumber real property.

¶ 22 However, a power of attorney is subject to limitations other than those expressed in the document itself. For example, as noted above, "[a] power of attorney creates a principal-agent relationship." *Eagar v. Burrows,* 2008 UT 42, ¶ 25, 191 P.3d 9; *see also Kline,* 776 P.2d at 63. "Generally, '[a]n agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship.'" *Eagar,* 2008 UT 42, ¶ 25, 191 P.3d 9 (quoting Restatement (Third) of Agency § 8.01 (2006)). Further, "'although an agent's interests are often concurrent with those of the principal, the general fiduciary principle requires that the agent subordinate the agent's interests to those of the principal and place the principal's interests first as to matters connected with the agency relationship.'" *Id.* (quoting

---

5. The title company refused to rely on the general power of attorney, presumably because it lacked a property description and therefore could not be recorded. *See* Utah Code Ann. § 57–3–105(2) (2010) (requiring a document to contain a legal description of real property before it can be recorded). Instead, the title company insisted on the special power of attorney and gave Shirley the appropriate form. She forged Blaine's name and had the form falsely notarized. On appeal, Franklin Credit acknowledges that the special power of attorney did not authorize Shirley to execute the Trust Deed on Blaine's behalf. We thus consider only whether the general power of attorney gave Shirley the authority to do so.

Restatement (Third) of Agency § 8.01 cmt. b (2006)).

¶ 23 This principle has long been a feature of Utah law. In *Huntsman v. Huntsman,* 56 Utah 609, 192 P. 368 (1920), our supreme court quoted the following:

> "A power of attorney given to an agent to act in the name and on behalf of his principal, though couched in general language, must, in the absence of anything showing a contrary intent, be construed as giving authority to act only in the separate, individual business of the principal and for his benefit. It cannot be construed as permitting the agent to engage in transactions foreign or repugnant to that business, or to bind the principal by acts done, not for his benefit and in his behalf, but for the private benefit of the agent himself, or for other persons."

*Id.* at 370 (quoting 1 Floyd Russell Mechem, A Treatise on the Law of Agency § 783 (2d ed. 1914)).

¶ 24 Here, the trial court determined that Shirley did not act loyally for Blaine's benefit:

> In this matter the court sees no benefit to Mr. Hanney. He never received any of the moneys loaned by the plaintiff nor were they used to improve the lot in question or provide anything for the family. The monies all went to pay obligations of Shirley Hanney. There is nothing to show that he received any benefit from Hanney Construction of any significant nature. In fact if anything, Mr. Hanney was damaged by the manner Bank One and Interwest Title handled the loan in question.

On appeal, Franklin Credit disputes this finding. It argues that the clear weight of the evidence established that Blaine benefitted when Shirley repaid money she had taken from their joint savings account, from Hanney & Hanney, and from Hanney Development. In addition, Franklin Credit argues, Blaine and Shirley deducted the interest from the loans on their federal and state income tax returns, resulting in significant tax refunds which were deposited in their joint accounts.

¶ 25 This argument, however, does not adequately challenge the trial court's finding. "To establish that a factual finding is clearly erroneous, the appealing party must marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Traco Steel Erectors, Inc. v. Comtrol, Inc.,* 2009 UT 81, ¶ 17, 222 P.3d 1164 (citation and internal quotation marks omitted).

> In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which supports the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous.

*West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991). Here, Franklin Credit's brief makes no attempt to marshal the evidence in support of the trial court's finding.

¶ 26 Furthermore, even if Franklin Credit is correct that Blaine received "significant benefits" from Shirley's execution of the Trust Deed, that is not the measure of an agent's duty. As noted above, an agent cannot "bind the principal by acts done, not for his benefit and in his behalf, but for the private benefit of the agent [her]self." *Huntsman,* 192 P. at 370. The agent must "subordinate the agent's interests to those of the principal and place the principal's interest first." *Eagar,* 2008 UT 42, ¶ 25, 191 P.3d 9. Franklin Credit does not contend that Shirley's acts satisfy this fiduciary standard, nor do they. The record amply demonstrates that, far from putting Blaine's interests first, Shirley betrayed Blaine and acted for the overriding purpose of concealing the deceit she had practiced upon him and his family. Shirley herself does not deny this but expresses profound remorse for her acts of financial infidelity. That Blaine may inci-

dentally have reaped some—even significant—benefit does not transform Shirley's actions into those of a loyal agent. We therefore cannot conclude that the trial court's finding is clearly erroneous.

¶ 27 Thus, relying on the trial court's factual finding that Blaine's best interests were not served when Shirley signed the Trust Deed, we conclude that the general power of attorney did not authorize Shirley to sign that document on Blaine's behalf.[6] Consequently, her signature on the Trust Deed did not encumber Blaine's interest in the property.[7]

### 2. Apparent or Implied Authority as Blaine's Agent

¶ 28 Alternatively, Franklin Credit contends that Shirley had apparent authority, implied authority, or both, to execute the Trust Deed. "Apparent authority is appropriately found where 'the acts or conduct of the principal ... creates an appearance which causes a third party ... to reasonably believe that a second party ... has authority to act on the principal's behalf.' Thus, 'an analysis of apparent authority focuses on the acts of the principal from a third party's perspective.'" *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 18, 222 P.3d 775 (quoting *Diston v. EnviroPak Med. Prods., Inc.*, 893 P.2d 1071, 1076 (Utah Ct. App.1995)).

¶ 29 In support of its argument that Shirley was clothed with apparent authority, Franklin Credit enumerates the following evidence:

> Blaine executed the [general power of attorney]. Blaine delegated complete authority for their financial affairs to Shirley. Blaine delegated complete authority for Hanney & Hanney to Shirley. Blaine delegated his general partner responsibilities for Hanney Development to Shirley. Blaine authorized Shirley to endorse his name on his paychecks. Blaine authorized Shirley to sign his name on their income

tax returns. In almost 30 years of marriage, Blaine never objected to Shirley acting on his behalf.

Missing from this summary is any reference to the focus of apparent authority analysis: Blaine's acts viewed from Bank One's perspective. Franklin Credit points to no act on the part of Blaine creating an appearance that caused Bank One to reasonably believe that Shirley had authority to act on Blaine's behalf. *See id.* Indeed, neither Bank One nor the title company ever dealt with Blaine. Accordingly, we reject Franklin Credit's apparent authority argument.

¶ 30 Nor do we find Franklin Credit's implied authority argument persuasive. Implied authority "embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent." *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988) (citations omitted). If Shirley had authority to encumber Blaine's interest in the Property, she may well have had authority to perform acts necessary, usual, and proper to accomplish that purpose, such as signing the paperwork ordinarily incident to a home mortgage. However, as demonstrated above, Shirley lacked the "main authority" to encumber Blaine's interest in the Property. Accordingly, she necessarily lacked any authority incident to it. We therefore cannot conclude that Shirley acted with either apparent or implied authority.

### 3. Ratification

¶ 31 Finally, Franklin Credit contends that, even if Shirley lacked the authority to bind Blaine at the time she signed the Trust Deed, Blaine later ratified Shirley's actions. "It is well-established under Utah law that [s]ubsequent affirmance by a principal of a contract made on his behalf by one who had at the time neither actual nor apparent authority constitutes a ratification, which

---

**6.** Because we dispose of this issue on this ground, we need not address the legal effect of the fact that Bank One did not rely on the general power of attorney.

**7.** Unlike those who deal with the trustee of a trust without knowledge of the trustee's lack of authority, Bank One points to no similar statutory protection for those who deal with an attorney-in-fact.

in general is as effectual as an original authorization." *Bullock v. Utah, Dep't of Transp.,* 966 P.2d 1215, 1218 (Utah Ct.App. 1998) (alteration in original) (citations and internal quotation marks omitted). "A principal may impliedly or expressly ratify an agreement made by an unauthorized agent." *Bradshaw v. McBride,* 649 P.2d 74, 78 (Utah 1982).

> "Ratification[,] like original authority[,] need not be express. Any conduct which indicates assent by the purported principal to become a party to the transaction[,] or which is justifiable only if there is ratification[,] is sufficient. Even silence with full knowledge of the facts may manifest affirmance and thus operate as a ratification. The person with whom the agent dealt will so obviously be deceived by assuming the professed agent was authorized to act as such, that the principal is under a duty to undeceive him.... So a purported principal may not be wilfully ignorant, nor may he purposely shut his eyes to means of information within his possession and control and thereby escape ratification if the circumstances are such that he could reasonably have been expected to dissent unless he were willing to be a party to the transaction."

*Moses v. Archie McFarland & Son,* 119 Utah 602, 230 P.2d 571, 574 (1951) (quoting 1 Samuel Williston & George J. Thompson on Contracts 805 (Rev. Ed. 1936)).

¶ 32 "Ratification is premised upon the knowledge of all material facts and upon an express or implied intention on the part of the principal to ratify." *City Elec. v. Dean Evans Chrysler–Plymouth,* 672 P.2d 89, 91 (Utah 1983); *see also Zions First Nat'l Bank,* 762 P.2d at 1098 ("Ratification requires the principal to have knowledge of all material facts and an intent to ratify."). "A deliberate and valid ratification with full knowledge of all the material facts is binding and cannot afterward be revoked or recalled." *Zions First Nat'l Bank,* 762 P.2d at 1098.

¶ 33 Finally, "the Utah statute of frauds requires that any agent executing an agreement conveying an interest in land on behalf of his principal must be authorized in writing.... Where the law requires the authority to be given in writing, the ratification must also generally be in writing." *Bradshaw,* 649 P.2d at 78 (citation omitted); *see also* Utah Code Ann. § 25–5–1 (Supp.2010).

¶ 34 Here, the trial court found, "The most credible evidence shows that Mr. Hanney had no knowledge of the loan by Bank One to Ms. Hanney...." This factual finding will not be reversed absent clear error. *See* Utah R. Civ. P. 52; *Peterson v. Jackson,* 2011 UT App 113, ¶ 54, 253 P.3d 1096. Franklin Credit asserts that Blaine had actual or constructive knowledge of the loans. Blaine's actual knowledge may be inferred, Franklin Credit contends, from the fact that interest from the loans was deducted on Blaine's income tax returns and from the fact that Blaine had full access to Hanney & Hanney's financial records, which specifically refer to the loans. Franklin Credit also contends that Shirley's knowledge may be imputed to Blaine because she was his trustee and his agent. Finally, Franklin Credit argues that Blaine had constructive knowledge of the loans because all of the deeds were recorded.

¶ 35 A principal cannot "purposely shut his eyes to means of information within his possession and control and thereby escape ratification if the circumstances are such that he could reasonably have been expected to dissent unless he were willing to be a party to the transaction." *Bullock,* 966 P.2d at 1219. We agree with the trial court that Blaine did not do this. On the contrary, Shirley actively concealed from Blaine the loan and her default. For example, Shirley lied to Blaine about a phone call he received from a Bank One representative inquiring about overdue payments. The record as a whole does not paint a scenario in which Blaine was "wilfully ignorant" or his knowledge of the facts placed him "under a duty to undeceive" Bank One as to Shirley's role. *See Moses,* 230 P.2d at 574. Rather, Blaine was as much a victim of Shirley's deceit as Bank One was.

¶ 36 Likewise, we cannot agree that the trial court clearly erred by refusing to impute to Blaine knowledge held by Shirley.

Imputing the knowledge of an unauthorized or unfaithful agent to her principal for purposes of demonstrating his knowledge of her acts would nullify the knowledge requirement. *See Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 63, 82 P.3d 1076 ("[I]t is well established that, where the agent has interests in the transaction adverse to the principal's, . . . knowledge of the facts at issue will not be imputed to the principal." (citation and internal quotation marks omitted)).

■ ¶ 37 Nor does recordation of the Trust Deed establish Blaine's knowledge of the material facts. Franklin Credit does not demonstrate—or even assert—that Blaine had any duty to make an examination of the public records. *See Christenson v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 307 (Utah 1983) ("Generally a failure to examine public records does not defeat an action for a false representation because in most cases there is no duty to make such an examination.").

¶ 38 As noted above, ratification requires that the principal had "full knowledge of all the material facts." *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1098 (Utah 1988). We conclude that the clear weight of the evidence does not preponderate against the trial court's finding that Blaine lacked such knowledge.

■ ¶ 39 Moreover, even if Blaine had full knowledge of all the material facts, Franklin Credit does not show that he intended to ratify the loans. While our cases are clear that "silence with full knowledge of the facts may manifest affirmance," they also require conduct, stating that "*conduct* which indicates assent by the purported principal to become a party to the transaction[,] or which is justifiable only if there is ratification[,] is sufficient." *Moses*, 230 P.2d at 574 (emphasis added). Franklin Credit points to no conduct on the part of Blaine that indicates assent to or ratification of the loan documents.

¶ 40 Finally, as noted above, "the Utah statute of frauds requires that any agent executing an agreement conveying an interest in land on behalf of his principal must be authorized in writing." *Bradshaw v. McBride*, 649 P.2d 74, 78 (Utah 1982); *see also* Utah Code Ann. § 25–5–1 (Supp.2010). And "[w]here the law requires the authority to be given in writing, the ratification must also generally be in writing." *Bradshaw*, 649 P.2d at 78. Franklin Credit does not dispute this principle or its application to the case at bar. Yet it points to no such writing in the record.

■ ¶ 41 In sum, "a deliberate and valid ratification" requires the principal "to have knowledge of all material facts and an intent to ratify." *Zions First Nat'l Bank*, 762 P.2d at 1098. In a transaction subject to the statute of frauds, he must also do so in writing. *See Bradshaw*, 649 P.2d at 78. On this record, we agree with the trial court that Blaine did not ratify this transaction.

¶ 42 Thus, as to the Trust Deed, we conclude that Shirley had authority to encumber her own interest in the property, thereby converting the joint tenancy into a tenancy in common, but that Shirley lacked authority to encumber Blaine's interest. The Trust Deed is thus a valid lien on Shirley's half-interest in the property but not on Blaine's. *See Calaska Partners, Ltd. v. Corson*, 672 A.2d 1099, 1104–05 (Me.1996) (stating that where husband's signature on loan documents is binding but wife's is not, lender may foreclose "only on [husband's] one-half interest in the family residence"). Accordingly, we affirm the trial court's ruling that the Trust Deed is not a valid lien on Blaine's interest in the Property, but reverse the trial court's ruling that the Trust Deed is not a valid lien on Shirley's interest.

### III. Blaine's Cross–Appeal

¶ 43 Blaine presents us with a cross-appeal.[8] He contends that, regardless of the merit of Franklin Credit's appellate claims, we must affirm on the ground that Franklin

---

**8.** Because Blaine does not seek to alter the judgment of the trial court, this cross-appeal would more properly be styled an alternative ground to affirm. "[I]f appellees or respondents merely desire the affirmance of the lower court's judgment, they need not, and should not, cross-appeal or cross-petition." *State v. South*, 924 P.2d 354, 356 (Utah 1996).

Credit failed to adduce admissible evidence of a necessary element of its case. Blaine relies on Utah Code section 78B–6–901(2), which states in pertinent part, "A [foreclosure] judgment shall include: (a) the amount due, with costs and disbursements...." Utah Code Ann. § 78B–6–901(2) (Supp.2010). Blaine asserts that Franklin Credit offered no admissible evidence of the amount due on the loan and therefore did not satisfy all the elements of section 78B–6–901(2).

¶ 44 After the close of evidence, the trial court asked for written closing briefs instead of oral closing arguments. In Blaine's written closing, he asserted that Franklin Credit had failed to present any evidence of an element of its claim: the amount due on the note. In response, Franklin Credit made several arguments. It asserted that it primarily sought a declaratory judgment that the Trust Deed was valid, and that such a declaratory judgment did not require a showing of the amount due and owing. It also asserted that, even on its claim for judicial foreclosure, the amount due and owing was not an element of its prima facie case, but could be proven later by affidavit. In any event, Franklin Credit argued, it did present evidence of the amount due. Its Initial Disclosures stated that the principal amount due and owing was $245,590.25. It answered a discovery request stating that the unpaid principal was $245,590.25, the unpaid interest was $150,997.26, and the unpaid late fees were $342.42. And Trial Exhibit 59, Shirley's handwritten list of debts prepared for her accountant, listed the amount due as $245,590.25. Further, Franklin Credit maintained that the amount due could be easily calculated from Shirley's trial testimony that the annual interest rate on the loan was 9.5% and that she had made no payments since November 2002. Finally, Franklin Credit maintained that "the parties implicitly reserved the issue of the amount of interest and attorney's fees and costs for future determination. This makes sense because interest will continue to accrue and attorney's fees and costs will continue to be incurred."

¶ 45 Nevertheless, "in an abundance of caution," Franklin Credit moved to re-open the evidence. The trial court opted to re-open the evidence on the ground that "Defendants would not be prejudiced if the Court re-opened the bench trial." The trial court ruled that (1) Franklin Credit should provide Blaine with its documentation regarding the amounts due and owing; (2) the defendants would have ten business days to notify the court whether they disputed the amount; (3) if the defendants did dispute the amount, the trial court "may schedule an evidentiary hearing on the amounts due and owing under the Bank One Trust Deed, if it deems a hearing necessary after it rules on the validity of the Bank One Trust Deed"; and (4) Blaine was awarded reasonable attorney fees for responding to the documentation provided at the conclusion of the hearing. However, Franklin Credit did not submit any additional evidence, and the trial court did not rule on this issue. Instead, it dismissed Franklin Credit's claims with prejudice and declared that the Trust Deed "is of no further force or effect and does not constitute a lien or claim" upon the Property.

¶ 46 On appeal, Blaine argues two points. First, he contends that the trial court erred in reopening the evidence to allow Franklin Credit to prove the amount due. Second, he contends that, even given the reopening, Franklin Credit never proved the amount due. Franklin Credit responds that evidence of the amount due was unnecessary at that juncture because Franklin Credit did not seek only judicial foreclosure, but also, a ruling that the Trust Deed was a valid lien. Franklin Credit argues that, if the Trust Deed is determined to be a valid lien, interest will continue to accrue during the course of litigation and that, should Franklin Credit subsequently choose to pursue judicial foreclosure, it can submit an affidavit of the amount due at that time. Franklin Credit maintains that it filed the Motion to Re-open "only as a precautionary measure because Defendants raised the issue in their post-trial brief." Finally, Franklin Credit argues that the reopening of the evidence was not an abuse of discretion.

¶ 47 As a general rule, "it lies within the sound discretion of the trial court to grant a motion to reopen for the purpose of taking additional testimony after the case has

been submitted but prior to entry of judgment." *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.,* 1999 UT App 87, ¶ 23, 977 P.2d 518 (citing *Lewis v. Porter,* 556 P.2d 496, 497 (Utah 1976)). We agree with the trial court that Blaine did not demonstrate that he would be prejudiced by reopening the evidence. Given the posture of the case at that juncture, we cannot say that the trial court abused its discretion in ruling that it could re-open the evidence.

¶ 48 However, because the trial court determined that the Trust Deed was invalid, it had no need to consider whether to schedule an evidentiary hearing. Our ruling today, a partial reversal, determines that the Trust Deed was a valid lien against Shirley's undivided one-half interest in the Property. It thus in effect rewinds the case to the point at which the trial court entered the order we reverse in part today.[9] We thus remand for further proceedings consistent with this opinion.

## CONCLUSION

¶ 49 Bank One relied on Shirley's representation that she was a trustee. In so doing, it was protected by Utah Code section 75-7-406. The effect of the Warranty Deed, therefore, was to convey the Property out of the Trust and to Blaine and Shirley as joint tenants. When Shirley then mortgaged the Property, she converted the joint tenancy into a tenancy in common. As a tenant in common, Shirley was able to encumber her own portion of the Property but could not encumber Blaine's portion unless she had the proper authority or unless he ratified the action. The general power of attorney did not authorize Shirley to encumber Blaine's portion of the Property; doing so would have been a breach of her fiduciary duty because it was not done loyally and for Blaine's benefit. Further, Blaine did not ratify Shirley's actions. We therefore conclude that Bank One's Trust Deed was a valid lien on Shirley's portion of the Property, but not on Blaine's. We further conclude that the trial

court did not abuse its discretion in determining that it could re-open the evidence. We thus affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

¶ 50 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and GREGORY K. ORME, Judge.

---

9. Franklin Credit asserts that if the trial court had ruled that the Trust Deed was valid, "Franklin would have had the right to complete its nonjudicial foreclosure even if the trial court denied

the motion [to re-open] or declined to order a judicial foreclosure of the Trust Deed." Blaine does not contest this assertion. We express no opinion with respect to it.