Associate Chief Justice Lee, dissenting:
 

 ¶ 56 Robert Porenta transferred marital property to his mother (Louise Porenta) while he was going through a divorce with his wife (Patricia Porenta). Robert then died while the divorce case was pending-before a divorce decree issued. Patricia now seeks to recover the property from Louise via a claim under the Utah Fraudulent Transfer Act (UFTA).
 

 ¶ 57 The property transfer was apparently fraudulent under the UFTA at the time of the transfer. But Patricia cannot recover under the UFTA unless she identifies a "claim" (as defined in the UFTA) against Robert at the time she filed her suit. The "claims" that Patricia has identified that could qualify are claims for child support and related claims in the divorce proceeding. Yet those claims were extinguished upon Robert's death, which abated the divorce action. And in Louise's view that precludes Patricia from obtaining any relief under the UFTA.
 

 ¶ 58 The majority disagrees. Looking to the district court order, it starts with the presumption that Patricia had a UFTA-defined claim at the time she filed unless proven otherwise by Louise, citing the appellant's burden of persuasion. It then declines to analyze the validity of that claim under the statute, because it believes Louise did not raise this issue on appeal. Instead, it believes the only threshold question Louise raised was "whether the death of Husband extinguished any debtor-creditor relationship"-in other words, whether the UFTA Claims abated at Robert's death.
 
 Supra
 
 ¶ 11. Ultimately, it determines that Louise failed to adequately address whether the "claims" described by the district court specifically abated when Robert died and the divorce abated. It affirms on that basis.
 

 ¶ 59 I disagree and accordingly dissent. First, I believe that Louise has sufficiently raised the issue of whether the "claims" underlying the district court's holding count under the language of the UFTA. Louise argues that Patricia had no right to payment from Robert at the time she filed her action. Unlike the majority, I don't believe that we can answer this question without deciding whether the district court's supposed "UFTA Claims" were originally valid, whether they abated or not. Second, I believe that any claims that might otherwise have been valid-namely, those arising in the divorce-nonetheless abated at Robert's death. The majority finds nuance here where I find none. Our law has long been clear on this point. Claims arising out of divorce abate upon the death of one of the spouses and the resulting abatement of the divorce. I believe that Patricia had no valid or surviving UFTA Claim at the time she filed her action, and I would reverse on that basis.
 

 ¶ 60 The majority avoids this result by repudiating a premise of our longstanding case law in this important field-that any right or claim arising from the existence or threat of a divorce proceeding is extinguished upon the death of one of the spouses. This clear, longstanding rule is set forth in a series of our cases.
 
 See
 

 In re Estate of Knickerbocker
 
 ,
 
 912 P.2d 969
 
 , 977 (Utah 1996) ;
 
 Nelson v. Davis
 
 ,
 
 592 P.2d 594
 
 , 597 (Utah 1979) ;
 
 Daly v. Daly
 
 ,
 
 533 P.2d 884
 
 , 885-86 (1975). And the rule is cast aside by today's majority opinion. That strikes me as problematic. We have no briefing from the parties on the merits or demerits of the principle we reject today. The briefing on both sides of this case accepted the viability of the rule we now reject. I disagree with the court's decision on this point. I would retain the existing rule in a case in which no party has asked us to revisit the clear standard set forth in our cases and the court has not offered a basis for repudiating that rule under the doctrine of
 
 stare decisis
 
 .
 

 I
 

 ¶ 61 The UFTA affords remedies for "creditors" against "debtors" who have engaged in fraudulent transfers of property.
 
 See
 
 UTAH CODE § 25-6-8 (2016) (setting forth the "relief against a transfer or obligation" that "a creditor ... may obtain"). A creditor, for example, may seek an "avoidance of the transfer ... to the extent necessary to satisfy the creditor's claim" against the debtor.
 
 Id
 
 . § 25-6-8(1)(a).
 

 ¶ 62 Precision in the use of these terms is crucial to unraveling some of the confusion in the questions presented in this case. One of the key terms with a potential for confusion is the term "claim." To qualify as a creditor under the UFTA a party must have a "claim" against a debtor. The UFTA defines a "Creditor" as "a person who has a claim," and a "Debtor" as "a person who is liable on the claim."
 
 Id
 
 . § 25-6-2(4), (6). This central concept of a "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."
 
 Id
 
 . § 25-6-2(3). To avoid confusion with run-of-the-mill usages of "claim," I will refer to UFTA-defined claims as "UFTA Claims."
 

 ¶ 63 A claim is a UFTA Claim only if it is against a debtor.
 
 See
 

 supra
 
 ¶ 62. Here, that might mean either Robert or Robert's estate. But this is another point of confusion stemming from imprecision in the terms used in this case. In the course of these proceedings we are speaking not only of Robert Porenta and Robert Porenta's estate, but also the "marital estate." The marital estate, however, is quite distinct from Robert Porenta's estate, as explained further below. The marital estate is a
 
 res
 
 or a property interest-not a person or entity who could qualify as a debtor. Only Robert Porenta's estate could qualify as a debtor, as it is only this estate that is a legal person or entity. To keep these points clear, I will refer to Robert Porenta's estate-the entity that succeeded to Robert Porenta's interests-as "Robert's Estate" or the "Estate."
 

 ¶ 64 A threshold question presented is whether Patricia Porenta has a viable UFTA Claim against Robert or his Estate. The majority says that she does. It affirms the district court's determination that Patricia had a "claim for the marital estate, including the joint tenancy."
 
 Supra
 
 ¶ 30 n.14.
 

 ¶ 65 I disagree. Any "claims" the majority or district court may have identified, other than those which arose from the divorce, are not UFTA Claims. The mere intonation of the word "claim" is not enough to satisfy the UFTA. That statute sets forth a limited conception of the kind of "claim" necessary to trigger its application. And the supposed "claim for the whole of the marital estate" does not qualify. The only set of claims asserted by Patricia that
 
 could have
 
 fulfilled the requirements of the UFTA were those that arose in the divorce, and those claims were extinguished upon Robert Porenta's death when the divorce proceedings abated.
 

 ¶ 66 The valid UFTA Claims that were raised by Patricia all abated with the abatement of the divorce. Patricia's claims in divorce made her a "creditor" under the UFTA at the time of the filing of the divorce proceedings: At that point she had a "right to payment" that was "unmatured" and "disputed."
 
 See
 

 supra
 
 ¶ 62. But Patricia's divorce claim abated upon the death of her husband.
 
 Nelson v. Davis
 
 ,
 
 592 P.2d 594
 
 , 597 (Utah 1979) ;
 
 see also
 

 In re Estate of Knickerbocker
 
 ,
 
 912 P.2d 969
 
 , 977 (Utah 1996). This is a long-settled tenet of our case law. Any right or claim arising from the existence or threat of a divorce proceeding is extinguished upon the death of one of the spouses.
 
 Nelson
 
 ,
 
 592 P.2d at 597
 
 .
 

 ¶ 67 The majority avoids this problem by overruling
 
 Knickerbocker
 
 and
 
 Nelson
 
 (while purporting only to be clarifying that those articulations of the rule were merely dicta). It then returns to a regime set out in
 
 In re Harper's Estate
 
 ,
 
 1 Utah 2d 296
 
 ,
 
 265 P.2d 1005
 
 (1954). I cannot concur in this approach for the following reasons.
 

 ¶ 68 First, I am not convinced that
 
 In re Harper's Estate
 
 is on point. The majority cites
 
 In re Harper's Estate
 
 for the proposition that "a court order that divide[s] marital property d[oes] not abate upon the death of a spouse."
 
 Supra
 
 ¶ 20. But
 
 In re Harper's Estate
 
 dealt only with "divorce decree[s]" that had not yet become final pursuant to Utah Code 1953 section 30-3-6 (now repealed), not orders entered during the pendency of the divorce. These are not identical. The former is a "final judgment in a suit for divorce," which "dissolves the marriage and usu[ally] resolves all matters concerning property and children."
 
 Decree
 
 , BLACK'S LAW DICTIONARY (10th ed. 2014). Orders, on the other hand, might encompass any number of issues arising during the course of a divorce, such as the child support orders discussed here. The rule in
 
 In re Harper's Estate
 
 addresses decrees rather than orders.
 
 [1]
 
 No such decree was issued in this case. Given that fact, the rule in
 
 In re Harper's Estate
 
 may not even apply.
 

 ¶ 69 Second, even if
 
 In re Harper's Estate
 
 would otherwise apply to this case, it was overruled by
 
 Daly v. Daly
 
 ,
 
 533 P.2d 884
 
 , 885-86 (Utah 1975). The majority overrules
 
 Daly
 
 and its progeny, calling their relevant language "dicta."
 
 Supra
 
 ¶¶ 21-27. It believes that the holding in
 
 Daly
 
 did not "affect[ ] the ultimate decision [in
 
 Daly
 
 ]."
 
 Supra
 
 ¶ 21. Even if true,
 
 [2]
 
 the court in
 
 Daly
 
 unequivocally announced a principle that has been relied on as law. If the majority wants to overrule precedent that has been operative for forty years, it should do so on the merits of the case under our standard for overruling precedent.
 
 See
 

 Eldridge v. Johndrow
 
 ,
 
 2015 UT 21
 
 , ¶¶ 21-22,
 
 345 P.3d 553
 
 (identifying the factors for when overruling of a precedent is appropriate).
 

 ¶ 70 Third, no one has asked us to revisit or repudiate the principles set forth in
 
 Daly
 
 ,
 
 Nelson
 
 , or
 
 Knickerbocker
 
 . In fact, Patricia cites both
 
 Nelson
 
 and
 
 Knickerbocker
 
 in her brief to this court. She does not ask us to abandon these cases in favor of the principle set forth in
 
 In re Harper's Estate
 
 . Our decision to overhaul the law in this field is likely to come as a big surprise to the parties in this case. And it may upset settled reliance interests in this important field.
 

 ¶ 71 For these three reasons, I respectfully dissent from the majority's repudiation of the principle set forth in the cases following
 
 In re Harper's Estate
 
 . I would uphold the rule that "when the death of one or both parties to a divorce action occurs during the pendency of the action, the action itself abates and their status, including their property rights, reverts to what it had been before the action was filed."
 
 Nelson
 
 ,
 
 592 P.2d at 597
 
 . And this principle would foreclose Patricia's assertion of a right to sue as a "creditor" protecting a "claim" against a "debtor."
 

 ¶ 72 Patricia
 
 had
 
 a "claim" as her husband's "creditor" at the time of the transfer of the property in question. But that is insufficient. As the majority notes, the UFTA "use[s] the present tense when discussing the [necessary] claim."
 
 Supra
 
 ¶ 12. Thus, the relevant timeframe under the UFTA is clear: "[T]here must be a claim or right to payment held by the creditor against the debtor
 
 at the time a UFTA claim is filed
 
 ."
 
 Supra
 
 ¶ 12 (emphasis added). And Patricia accordingly is in no position to assert a UFTA claim on the basis of the cause of action that she filed-and
 that was subsequently abated-in the divorce proceeding.
 

 ¶ 73 The claims asserted in the divorce proceeding accordingly were not in existence at the time Patricia filed her UFTA action. The majority nonetheless declines to consider whether a claim in fact existed at the time Patricia filed her action. Instead it presumes that the district court correctly identified a surviving UFTA Claim, and faults Louise Porenta for failing to carry her burden of challenging the district court's decision on appeal. But none of the majority's points is persuasive.
 

 A
 

 ¶ 74 The district court held in Patricia's favor, and thus apparently believed that Patricia had a UFTA Claim of some kind. In its order, it set out a few possibilities:
 

 Plaintiff's claim against Defendant at the time of the transfer encompassed the whole of the marital estate, including the right to preserve the joint tenancy or require Robert to convey his interest free and clear to Patricia. The joint tenancy itself was a marital asset that Robert could not unilaterally dissipate while the divorce was pending.
 

 ¶ 75 Patricia has advanced similar arguments in the district court and in this appeal. She seeks to establish a UFTA Claim on the basis of alleged property interests, asserting that "insofar as a divorce action seeks an adjudication of property rights, the cause of action survives and may be revived by the proper party in interest for the exclusive purpose of determining the property rights." And she contends that these rights could be "brought against the deceased person's estate." In Patricia's view her "property rights had been unchanged during the divorce and were therefore unchanged by dismissal of the divorce action." Thus, Patricia asserts that she "still had, as before, a
 
 marital interest
 
 in the home that she and [Robert] acquired...."
 

 ¶ 76 The majority endorses the approach advanced by Patricia and upheld by the district court. It states that Patricia's "underlying claim against [Robert] was for 'the whole of the marital estate, including the right to preserve the joint tenancy or require [Robert] to convey his interest free and clear to [Patricia].' "
 
 Supra
 
 ¶ 14.
 

 ¶ 77 Patricia has thus identified-and the district court and majority apparently have upheld-three possible grounds for establishing a UFTA Claim: (1) a claim to the "whole of the marital estate"; (2) an interest in or a right to "preserve" the joint tenancy; and (3) a right to require Robert to convey his interest in the joint tenancy to Patricia. Yet none of these is a UFTA Claim-a "right to payment" from Robert or from his Estate. At most the district court identified purported rights or interests that Patricia may be able to assert.
 

 ¶ 78 Some of the cited rights or interests are simply not sustainable under the law. But clearly none qualifies as a "right to payment" from a debtor. And in any event there is no "debtor" against whom any such claim could be asserted, as Robert is dead and Patricia has not identified any basis for a claim against Robert's Estate.
 

 1
 

 ¶ 79 A "claim to the marital estate" is not a UFTA Claim. A UFTA Claim, again, is a "right to payment." And Patricia has no "right to payment" "
 
 to
 
 the marital estate." (Emphasis added.) That statement makes no logical sense. That tells us there is no UFTA Claim. The asserted "claim to the marital estate" is simply an alleged property interest.
 

 ¶ 80 A property interest is not a UFTA Claim.
 
 [3]
 

 See
 

 Rosier v. Rosier
 
 ,
 
 227 W.Va. 88
 
 ,
 
 705 S.E.2d 595
 
 , 606-08 (2010) (concluding that "the basis of any 'claim' " under the Uniform Fraudulent Transfer Act "cannot be founded upon whether the affected
 
 property
 
 would have been declared marital property had the [parties] been seeking a divorce prior to [the husband's] death" (emphasis added)). If I own a car it makes no sense to say that I have a "right to payment" in that car. The mere ownership interest is not a right to payment. A right to payment may arise in the event of a transaction involving the car. If I enter into a contract to sell the car then I would have a right to payment. But until then I have only an interest in the car.
 

 ¶ 81 The same goes for an interest in a marital estate. If a married couple owns a home in joint tenancy neither has a "right to payment" against the other. Both just have joint rights or interests. Their rights or interests could be transformed into a right to payment through a claim asserted in a divorce proceeding. But if the divorce abates before such a claim is reduced to a judgment then there is no right to payment.
 

 ¶ 82 That is exactly what happened here. Patricia had an interest in the marital estate. But she had no right to payment. She apparently sought to establish such a right in the claims she filed in divorce, but those claims were extinguished (and the divorce abated) upon Robert's death.
 

 ¶ 83 Robert's death also highlights a further defect in Patricia's case-the lack of a "debtor" for any purported UFTA Claim. Some claims survive the death of the defendant and succeed to the deceased defendant's estate. But other claims do not.
 
 See
 

 Gressman v. State
 
 ,
 
 2013 UT 63
 
 , ¶ 24,
 
 323 P.3d 998
 
 (noting the common law rule of abatement of personal tort claims at death and discussing statutory exceptions to that rule). And Patricia has identified no ground for concluding that her alleged interest in the marital estate amounts to a claim for which the Estate would be liable.
 

 2
 

 ¶ 84 Patricia's interest in or asserted right to prevent Robert from severing the joint tenancy is likewise not a UFTA Claim. This interest or right fails for the reasons that the interest in the marital estate fails-there is no UFTA Claim because there is at most an interest in property, not a right to payment, and there is no debtor because Patricia has not identified a basis for any liability of the Estate on this purported claim.
 

 ¶ 85 There is also a more fundamental problem with this interest: Our law makes clear that there is no right to prevent Robert from severing the joint tenancy. Under Utah law Robert was free to alienate his portion of the property. "It is well-settled that a partial owner" of a joint tenancy "may sell or encumber her share."
 
 Franklin Credit Mgmt. Corp. v. Hanney
 
 ,
 
 2011 UT App 213
 
 , ¶ 18,
 
 262 P.3d 406
 
 (citation and internal quotation marks omitted). "This is true even when the joint tenants are husband and wife...."
 
 Id
 
 . ;
 
 see also
 

 Nelson v. Davis
 
 ,
 
 592 P.2d 594
 
 , 596 (Utah 1979) ("It is not to be questioned that a joint tenant may in proper circumstances make a bona fide conveyance of his interest in property to a third party....").
 

 ¶ 86 There is an exception to this general rule. A court may enter an order prohibiting such a transfer during the pendency of a divorce proceeding.
 
 See
 

 Nelson
 
 ,
 
 592 P.2d at
 
 597 ;
 
 In re Estate of Knickerbocker
 
 ,
 
 912 P.2d 969
 
 , 977 (Utah 1996). But there is no suggestion by any party (or the majority) that any such order was entered in the divorce proceedings in this case.
 
 [4]
 
 And even if such an
 order had been entered, it would have been extinguished upon the abatement of the divorce case on Robert's death. Even if the right hadn't abated, moreover, the interest in preventing Robert from alienating his share of the property would not rise to the level of a "right to payment" from Robert, and so it couldn't have been a UFTA Claim to begin with.
 

 3
 

 ¶ 87 The right to "require Robert to convey his interest" in the joint tenancy to Patricia also fails for the same reasons. First, there is no legal basis for any supposed right to require Robert to convey his interest. Second, even if there were such a right it could not rise to the level of a "right to payment," and thus would not qualify as a UFTA Claim. And third, there is no "debtor" because Patricia has not identified a basis for any liability on the part of Robert's Estate for the claimed interest in the joint tenancy.
 

 B
 

 ¶ 88 The majority resists the above conclusions without reaching their merits. It does so first by reframing the question presented-asking not whether Patricia has identified a UFTA Claim but "whether [Patricia's] claim is somehow barred against the estate or is no longer for the entire marital estate."
 
 [5]
 

 Supra
 
 ¶ 32. This masks the underlying question whether any "claim" at issue qualifies as a UFTA Claim. There is no UFTA Claim here for all the reasons set forth above. And without a proper UFTA Claim it is irrelevant whether some other property right or interest may be viably alleged against Robert's Estate.
 

 ¶ 89 The majority's next move is to avoid the question presented on the basis of purported missteps of Louise's counsel: (1) counsel's supposed concession at oral argument that Patricia has a claim against Robert's Estate,
 
 supra
 
 ¶ 30; and (2) Louise's alleged failure to adequately brief the issues on appeal. I find no merit to either argument.
 

 1
 

 ¶ 90 The oral argument transcript does not support the court's determination of a concession on Louise's part. Louise's counsel did not concede that Patricia had a UFTA Claim or that any such claim extended to her husband's estate after his death. Instead, in response to probing questions from members of this court, counsel only acknowledged that "
 
 if
 
 there is a claim that still exists that wasn't abated by the divorce," such a claim would transfer to the son's estate. (Emphasis added.) But that doesn't tell us anything about the questions presented-whether there is a valid UFTA Claim and whether any such claim may be asserted against the estate. Counsel for Louise never made a concession on these points.
 

 ¶ 91 In fact counsel argued the contrary. Counsel expressly asserted that there was no UFTA Claim-clarifying that the only "claim" that counts is a "right to payment." And clearly counsel was not conceding that any UFTA Claim would transfer to Robert's Estate. Counsel specifically contended that the only UFTA Claim-claim to a "right to payment"-was in the divorce proceeding, and that such claims were extinguished upon Robert's death.
 

 2
 

 ¶ 92 The record also fails to support the conclusion that Louise failed to contest the district court's holding that Patricia "had a claim for the marital estate, including the joint tenancy."
 
 Supra
 
 ¶ 30 n.14. It says that Louise "did not argue that [the
 
 Nelson
 
 line of cases] applied to any claims that could be held by [Patricia]," but that she instead argued only that the
 
 Nelson
 
 line means that "all
 
 court orders
 
 dealing with property rights abate upon the death of a party."
 
 Supra
 
 ¶¶ 28, 23 n.7 (emphasis in original).
 

 ¶ 93 The majority deems that a fatal briefing error. It says that Louise "never grappled
 with th[e] important question" of whether Patricia's supposed "claim for the joint tenancy survived the death of [Robert]."
 
 Supra
 
 ¶ 32. And it rules against Louise on the grounds of "[in]adequate briefing."
 
 Supra
 
 ¶ 32.
 

 ¶ 94 I see the matter differently. I see no way to read Louise's brief in the way the majority does. Perhaps Louise could have framed her position more forcefully or more clearly. But she clearly (and repeatedly) contended that "
 
 any
 
 debtor/creditor relationship that existed between husband and wife during the pendency of the divorce action terminated upon husband's death and subsequent abatement of the divorce action." (Emphasis added.) This general, sweeping argument was made repeatedly in Louise's opening (and only) brief. She argued that there is "no set of facts under which the trial court could have found
 
 the debtor/creditor relationship
 
 between Husband and Wife survived the abatement of the divorce as a matter of law," and that Patricia "has
 
 no currently enforceable claim
 
 against Husband" because she "cannot haul Husband back into the divorce court" to enforce her claims and "the divorce court cannot obtain jurisdiction over him." (Emphasis added.)
 

 ¶ 95 The majority says that Louise only argued that "the divorce court's orders for 'child support and medical and insurance expenses' were vacated" by the husband's death and abatement of the divorce proceeding, or else that only "
 
 court orders
 
 dealing with property rights abate upon the death of a party."
 
 Supra
 
 ¶¶ 15, 23 n.7 (emphasis in original). But that is incorrect for two reasons. First, as noted, Louise was advocating a sweeping rule of abatement that extinguishes
 
 any
 
 claim (or, in other words, any debtor/creditor relationship). To the extent her brief lacks detail it is because she is arguing for a broad rule that doesn't require the nuance now demanded by the majority.
 

 ¶ 96 Second, Louise's brief does in fact address the property claims. Citing
 
 Nelson v. Davis
 
 ,
 
 592 P.2d 594
 
 (Utah 1979), Louise asserts that " 'when the death of one or both parties to a divorce action occurs during the pendency of the action, the action itself abates and their status,
 
 including their property rights, reverts to what it had been before the action was filed
 
 ,' " (quoting
 
 Nelson
 
 ,
 
 592 P.2d at 597
 
 (emphasis added)). And in light of this rule, Louise contends that there is no viable property claim asserted in the divorce proceeding. Louise observes that "the 'property rights' which revert upon abatement of [a] divorce action are only those rights 'acquired in the divorce action,' or, in other words, those rights granted by the court via an order issued during the divorce," (quoting
 
 Nelson
 
 ,
 
 592 P.2d at
 
 597 ). She also says that "[t]hese [property] rights abate upon death of one of the parties because the court no longer has jurisdiction over the parties, and without jurisdiction, the court cannot issue a divorce decree"-i.e., a decree awarding property to a party to a divorce proceeding that is legally abated and thus of no further legal effect. "This is so because one cannot divorce a dead person."
 
 See
 

 Farrell v. Porter
 
 ,
 
 830 P.2d 299
 
 , 302 (Utah Ct. App. 1992).
 

 ¶ 97 The legal and logical grounds for Louise's position strike me as unimpeachable. Patricia asserted both a claim for child support and an asserted property interest in the entire marital estate. But the property claim was a claim in a divorce proceeding-by a wife against a husband. And our case law establishes a general rule of abatement of a divorce proceeding upon the death of a spouse-a rule that forecloses any and all claims for relief that may be asserted within that proceeding.
 

 ¶ 98 I cannot see how the law could be otherwise. Without a spouse subject to the divorce court's jurisdiction there is no party against whom a judgment may be enforced. And without an adverse party there is no viable adversary proceeding.
 

 ¶ 99 Patricia characterizes her property claim as consisting of an alleged "right to benefit from the joint tenancy or to have Husband convey his interest to her." But Robert is dead, and thus cannot be subject to an order of the divorce court addressed to
 
 his
 
 interests in the marital estate. So the property claim
 
 in the divorce proceeding
 
 has no continuing viability; when the UFTA Claim was filed in this case there was no longer any legal basis for this property claim.
 

 ¶ 100 This does not mean that a surviving spouse with asserted property rights is without recourse. Our law, as noted, provides that the parties' "status, including their property rights, reverts to what it had been before the action was filed."
 
 Nelson
 
 ,
 
 592 P.2d at 597
 
 . And that leaves the surviving spouse with the prerogative of asserting her rights against any party who may claim an adverse interest.
 

 ¶ 101 Patricia raises this argument in her briefing before us. Citing
 
 American Jurisprudence 2d
 
 , she asserts that " '[a]lthough the death of a spouse ends the cause of action for divorce and abates any pending action for divorce, courts have held that insofar as a divorce action seeks an adjudication of property rights, the cause of action survives and may be revived by the proper party in interest for the exclusive purpose of determining the property rights,' " (quoting 24 AM. JUR. 2D
 
 Divorce & Separation
 
 § 119 (2017) ). Patricia further notes that the "gist of a divorce action is termination of the marital relationship, a very personal matter, and loss of that person's ability to participate in the litigation was such a prejudice to the case that it would be unjust for the court to proceed to judgment after a party's death." And she seeks to distinguish property claims on this basis, contending that "[c]laims relating to property rights or debts, not being so personal,
 
 could be brought against the deceased person's estate
 
 or could be brought by the deceased's estate." (Emphasis added.)
 

 ¶ 102 A reply brief addressed to these issues would have been helpful. But I would not conclude that Louise defaulted by failing to address these issues in a reply brief. Her opening brief seems to me to adequately address the question presented-and to identify the proper response to Patricia's argument.
 

 ¶ 103 The principle advocated by Patricia (and apparently embraced by the majority) can easily be accepted without any endorsement of the viability of Patricia's UFTA Claim in this case. Patricia may well have a right to assert an interest in property
 
 against the Estate of Robert
 
 . But that potential interest does not rise to the level of a UFTA Claim. And Patricia has not asserted such a claim or cited it as a basis for this UFTA action.
 

 ¶ 104 The only claims that Patricia cited in her complaint-or at any point below-were claims asserted against Robert in the underlying divorce proceeding. The district court's ruling likewise rested exclusively on claims arising from the filing of a divorce proceeding. Counsel for Patricia conceded this point at oral argument, moreover, acknowledging that the only claim at issue "is a claim based on the marital interest" stemming from the divorce case.
 

 ¶ 105 I would reverse on the ground that the claims identified by Patricia as the basis for her UFTA action were extinguished by the abatement of the divorce action. And I would leave open the possibility (not briefed and not properly presented for our review) that Patricia may yet have other claims not pleaded or argued in this case.
 

 3
 

 ¶ 106 The possibility that Patricia might be able to assert
 
 another sort of claim
 
 that would not be affected by Robert's death is a question raised for the first time by members of this court at oral argument. With that in mind, we can hardly fault Louise for failing to anticipate and respond to that possibility.
 

 ¶ 107 Throughout the proceedings in this case-both in the trial court and in the briefing on appeal-both sides focused their arguments exclusively on the claims arising in the divorce proceeding. In my view, no one ever asserted that a claim unrelated to the divorce might form the basis of Patricia's UFTA Claim.
 

 ¶ 108 It is not our role to speculate on the possibility of such a claim. Perhaps counsel for Patricia will identify one after our decision in this case. But we are not now in a position to opine on the viability of a hypothetical claim that was neither pleaded nor briefed as the basis for an action under the UFTA. On the pleadings and briefing before us, we are asked only to decide whether Patricia had a viable
 
 divorce
 
 "claim" as a "creditor" under the UFTA at the time she filed this case. And the answer to that question is straightforward: She did not because
 that claim was extinguished upon the death of her husband.
 
 [6]
 

 II
 

 ¶ 109 I respectfully dissent for the reasons set forth above. I would hold that Patricia is not entitled to any relief under UFTA. And I would accordingly reverse the district court's decision denying Louise's motion to dismiss. I would also reverse the award of attorney fees in Patricia's favor.
 

 This point also diminishes the force of the claim that "[n]early every other jurisdiction follows the rule (or something similar) to that laid out in
 
 In Re Harper's Estate.
 
 "
 
 Supra
 
 ¶ 26 n.12;
 
 see, e.g.
 
 ,
 
 Bridgeman v. Bridgeman
 

 182 W.Va. 677
 
 ,
 
 391 S.E.2d 367
 
 , 369 (1990) (setting out the rule that "divorce actions abate at death except as to property rights" in the context of a divorce decree, rather than an order);
 
 Goodloe v. LaRoche Indus., Inc.
 
 ,
 
 686 So.2d 335
 
 , 337-38 (Ala. Civ. App. 1996) (addressing the issue of divorce abatement in the context of a final divorce judgment)
 
 overruled on other grounds by
 

 Banks v. Premier Serv. Co.
 
 ,
 
 184 So.3d 370
 
 (Ala. Civ. App. 2014).
 

 While I am not convinced that the pronouncement in
 
 Daly
 
 was dicta, it seems clear to me that the rule in
 
 Nelson
 
 cannot be dicta. The court in
 
 Nelson
 
 addressed an "alternative contention" by the appellant: "even if she does not take by the deed, she should be entitled to her mother's interest in the property as the executrix of her estate and her heir."
 
 Nelson
 
 ,
 
 592 P.2d at 597
 
 . The court determined that, "[i]n regard to any rights in the property that her mother may have acquired in the divorce action, the principle announced by this Court in the case of [
 
 Daly
 
 ] is applicable[.]"
 

 Id.
 

 Whatever
 
 Daly
 
 's pedigree might be, the
 
 Nelson
 
 court relied on it in disposing of a theory by the appellant. I don't understand how this does not "affect[ ] the ultimate decision of the case."
 
 Supra
 
 ¶ 21. And I think it unwise for us to cast aside a clearly stated premise of our law without any analysis under the doctrine of
 
 stare decisis
 
 or the benefit of briefing from the parties.
 

 The majority calls this a "new issue."
 
 Supra
 
 ¶ 11 n.3. But this is exactly the issue that the parties asked us to resolve. Louise argued that there was no "debtor/creditor relationship between [Robert] and [Patricia]." To evaluate that argument, we must decide whether Patricia had a UFTA Claim against Robert. Utah Code § 25-6-2 (2016). The district court held, and the majority now affirms, that that UFTA Claim took the form of a "property interest." But that cannot stand under the plain language of the UFTA.
 

 The majority's position highlights a fundamental difference between our respective approaches to this case. The majority presumes that the district court identified a valid UFTA Claim and asks only whether it could have survived. It bases that conclusion on the proposition that Louise's challenge on appeal was limited to the narrow question of survival of the claim. I, on the other hand, believe that Louise's brief-while perhaps underdeveloped-squarely raises the question whether a UFTA Claim exists, for the reasons just stated. A UFTA Claim could "not exist" in two ways: (1) because it existed once but expired (such as the child support payment orders), or (2) because the "claim" identified by the district court never qualified under the statute (such as the "property rights" at issue here). Louise addresses both when she argues that no UFTA Claim existed to validate Patricia's suit. I discuss this further below.
 
 Infra
 
 ¶¶ 92-105.
 

 The majority speculates that the reason "there was likely no order entered" was because Robert committed a "fraud on the court."
 
 Supra
 
 ¶ 24 n.9. I am not aware of any basis for such speculation, and I would not do so here.
 

 It is unclear whether the first "estate" in that sentence is referring to Robert's Estate or the marital estate. I assume that it is the former, since the preposition "against" would not make sense if applied to the marital estate, which is not a party and thus cannot have a claim "against" it.
 

 Robert appears to have made a transfer that was fraudulent when made. But the question presented is not whether we condemn the actions of Robert-or have sympathy for Patricia. It is whether Patricia has asserted a viable claim under the UFTA. If she has not then Louise is entitled to dismissal of this action.
 

 That conclusion would leave for another day the question whether Patricia has other viable claims against Louise that were not asserted herein. Yet it would not leave parties in a divorce proceeding free to thumb their nose at pending court orders. Any transfer in violation of such an order would subject the transferor to contempt charges. And the transferee's interests in the property would be placed in substantial jeopardy.
 
 See
 

 Nelson
 
 ,
 
 592 P.2d at 597
 
 (when marital property is transferred during a divorce action, transferee takes the property subject to the outcome of that action if she has actual knowledge that the transferor is barred by the underlying litigation from transferring the property);
 
 Hidden Meadows Dev. Co. v. Mills
 
 ,
 
 590 P.2d 1244
 
 , 1248 (Utah 1979) ("One who takes with full knowledge that the property taken is the subject of on-going litigation acquires only the grantor's interest therein, subject to whatever disposition the court might make of it.");
 
 Timm v. Dewsnup
 
 ,
 
 921 P.2d 1381
 
 , 1392 (Utah 1996) (transferee taking property subject to a
 
 lis pendens
 
 "acquires only the grantor's interest therein, as determined by the outcome of the litigation" (citing
 
 Hidden Meadows
 
 ,
 
 590 P.2d at
 
 1248 )).